**[Cite as *State v. Lizarraga*, 2025-Ohio-3187.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

ELIAS LIZARRAGA

    Appellant

C.A. No.     23AP0041

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2022 CRC-I 0071

DECISION AND JOURNAL ENTRY

Dated: September 8, 2025

CARR, Judge.

{¶1}    Appellant, Elias Lizarraga, appeals the judgment of the Wayne County Court of Common Pleas. This Court affirms.

I.

{¶2}    This matter arises out of a controlled drug purchase executed by the Medway Drug Enforcement Agency ("Medway) in Baughman Township. After meeting with Medway agents at a secure location, a confidential informant travelled under surveillance to Lizarraga's residence and purchased methamphetamine from Lizarraga.

{¶3}    On February 14, 2022, the Wayne County Grand Jury indicted Lizarraga on one count aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), one count of aggravated possession of methamphetamine in violation of R.C. 2925.11(A), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3). The counts of aggravated trafficking and aggravated possession were each accompanied by a three-year firearm specification pursuant

to R.C 2941.145(A) and a one-year firearm specification pursuant to R.C. 2941.141(A). Lizarraga pleaded not guilty to the charges and the matter ultimately proceeded to a jury trial. The jury found Lizarraga guilty of aggravated possession of drugs and the attendant specifications, as well as having weapons while under disability. The jury found Lizarraga not guilty of aggravated trafficking in drugs. At sentencing, the State elected for the trial court to impose sentence on the three-year firearm specification. The trial court imposed an aggregate sentence of five and a half years imprisonment.

{¶4} On appeal, Lizarraga raises four assignments of error.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MR ELIAS LIZARRAGA.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN DENYING MR. LIZARRAGA'S [CRIM.R. 29] MOTION FOR ACQUITAL.

{¶5} In his first assignment of error, Lizarraga argues that the State failed to present sufficient evidence to sustain his convictions. In his fourth assignment of error, Lizarraga maintains that the trial court erred in denying his motion for a judgment of acquittal.

{¶6} Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶7} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶8} Lizarraga was convicted of one count of aggravated possession of drugs in violation of R.C. 2925.11(A), which states, "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Methamphetamine is a Schedule II controlled substance. *See* Adm.Code 4729.9-1-02(C)(2).

{¶9} In connection to his conviction for aggravated possession of drugs, Lizarraga was also found guilty and sentenced on a mandatory three-year firearm specification pursuant to R.C. 2941.145(A), which states, in pertinent part, that the "[i]mposition of a three-year mandatory prison term upon an offender under [R.C. 2929.14(B)(1)(a)(ii)] is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶10} Lizarraga was also convicted of having weapons while under disability in violation of R.C. 2923.13(A)(3), which states that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm . . . if . . . [t]he

person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

{¶11} R.C. 2923.11(B) provides as follows:

(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

Background

{¶12} At trial, the State presented evidence during its case-in-chief in support of the following narrative:

{¶13} Medway agents received a report from a confidential informant that Lizarraga was dealing drugs out of his home on Tannerville Road in Baughman Township. The confidential informant indicated that Lizarraga had agreed to sell the confidential informant two ounces of methamphetamine for $800. Agent Carl Festa testified that after verifying the report, Medway set up a controlled drug purchase at Lizarraga's residence on September 7, 2021. Medway agents met the confidential informant at a secure location that was within two miles of Lizarraga's residence. After searching the confidential informant to ensure that he was not in possession of any currency, contraband, or weapons, the confidential informant was provided with $800 in cash in order to facilitate the drug purchase. The Medway agents also equipped the confidential informant with a

body wire and a secondary recording device which allowed for covert audio and video surveillance.

{¶14} The confidential informant drove to Lizarraga's residence under surveillance. When the confidential informant arrived at Lizarraga's residence, law enforcement continued to monitor the situation using live transmission equipment. The confidential informant found Lizarraga waiting on the porch and the two men promptly entered the residence. After a short time, the confidential informant handed Lizarraga the designated $800 cash and Lizarraga used a digital scale to measure the specified amount of methamphetamine. Lizarraga placed the methamphetamine into two plastic baggies and handed the baggies to the confidential informant. Near the end of the transaction, Lizarraga and the confidential informant discussed the possibility of future drug deals.

{¶15} A video of the controlled drug purchase was played at trial. Several screenshots from the video were also introduced as exhibits. Agent Festa testified that it is common for drug dealers to carry firearms and that, at one point during the video, Lizarraga and the confidential informant began "talking about packing, [in] reference to a firearm." In the video, Lizarraga can be heard saying that because both men carry firearms, he would insist on conducting future transactions outside under circumstances where his children were home. When the confidential informant suggested that he only carried a BB gun, Lizarraga lifted his shirt to expose his waistband and said, "I don't play." The video further showed that, when the confidential informant exited the residence, there was a boy wearing a backpack in the driveway.

{¶16} After the controlled drug purchase, the confidential informant immediately drove to meet the Medway agents, where he turned over approximately 56 grams of methamphetamine

that he had purchased from Lizarraga. The State presented evidence at trial that Lizarraga had multiple prior felony convictions, including one conviction for felony possession of heroin.

## Sufficiency Challenge

{¶17} In his first assignment of error, Lizarraga sets forth a broad argument pertaining to the sufficiency of the evidence, stating that "the State failed to establish on the record sufficient evidence to support the charges levied against [] Lizarraga[.]" Although Lizarraga offers a summary of the evidence in support of his first assignment of error, Lizarraga has not tailored his argument to a particular charge.

{¶18} As detailed in the foregoing paragraphs, the State presented evidence that, when construed in the light most favorable to the State, was sufficient to support Lizarraga's convictions for aggravated possession of drugs in violation of R.C. 2925.11(A), and the attendant firearm specification, as well as his conviction for having weapons while under disability in violation of R.C. 2923.13(A)(3). It follows that the sufficiency challenge contained in Lizarraga's first assignment of error is without merit.

## Crim.R. 29(A) Challenge

{¶19} In his fourth assignment of error, Lizarraga contends that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29(A). Lizarraga's challenge to the trial court's denial of his motion for acquittal focuses on whether the State presented evidence that there was a firearm involved in the controlled drug purchase. Lizarraga maintains that while he stated during the transaction that he "packed," he never indicated that a functional firearm was on his person during the controlled drug purchase.

{¶20} We are mindful that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof."

*Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus. Furthermore, this Court must construe the evidence in the light most favorable to the State when reviewing the trial court's denial of a motion for acquittal. *State v. Messer*, 107 Ohio App.3d 51, 54 (9th Dist. 1995). Here, the State presented a video of the controlled drug purchase where Lizarraga made a point to raise the topic of carrying a firearm, stating, "Listen, I know you pack and I pack." The confidential informant attempted to downplay the subject by suggesting that he only carried a BB gun. Incredulous, Lizarraga responded by saying, "I don't play." Lizarraga then turned to the confidential informant, lifted his shirt, and exposed his waistband. While the video does not depict Lizarraga's waist area, one can draw a reasonable inference from this evidence that Lizarraga exposed his waistband to show that he was in possession of a firearm as defined by R.C. 2923.11(B)(1). Accordingly, this evidence, when construed in the light most favorable to the State, was sufficient to sustain Lizarraga's conviction on the firearm specification contained in count two as well as the charge of having weapons while under disability contained in count three.

{¶21} Lizarraga's first and fourth assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE ADMISSION [OF] MR. ELIAS LIZARRAGA'S EXHIBITS.

{¶22} In his third assignment of error, Lizarraga contends that the trial court abused its discretion when it did not permit the defense to introduce several exhibits depicting a text exchange between the confidential informant and Lizarraga that occurred after the incident. This Court disagrees.

{¶23} A trial court possesses broad discretion in determining the admission of evidence and an appellate court should not disturb a trial court's ruling regarding the admission of evidence absent an abuse of discretion. *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). An abuse of

discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶24}** Evid.R. 401 states that "[r]elevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Evidence which is not relevant is not admissible." Evid.R. 402.

**{¶25}** Lizarraga testified in his own defense at trial. During his testimony, Lizarraga indicated that a family member put him in touch with the confidential informant, who was interested in purchasing methamphetamine. Lizarraga testified that the man who acted as the confidential informant was a drug addict with a volatile reputation and that, upon their encounter, Lizarraga found the confidential informant to be in a state of desperation. Lizarraga testified that he was no longer involved with drugs but he agreed to facilitate a one-time methamphetamine transaction in order to rid himself of any trouble with the confidential informant. Lizarraga approached a drug dealer who provided Lizarraga with the methamphetamine as well as a Smith and Wesson .40 caliber handgun for protection. Lizarraga explained that he needed to protect himself given that the confidential informant had demonstrated a habit of carrying a firearm, including in the presence of children. Lizarraga testified that, after the controlled drug purchase that gave rise to the charges in this case, the confidential informant reached out regarding additional dealings but Lizarraga was not amenable.

**{¶26}** Near the end of the direct examination of Lizarraga, the defense attempted to introduce four exhibits depicting a series of text messages that the confidential informant sent Lizarraga on September 29, 2021, as well as one text message that the confidential informant sent Lizarraga on October 2, 2021. The trial court ruled that the text messages were not relevant to the

charges in this case, at which time the defense proffered the exhibits. During the September 29, 2021 text exchange, the confidential informant expressed anger and frustration with Lizarraga for not engaging in additional dealings. At one point, the confidential informant implied that Lizarraga owed him money, texting. "either [] pay me or I beat yo ass[.] You have 24 hrs[.]" When the confidential informant pressed the matter, Lizarraga texted, "I'm in Canton I'll be thru just know you better shoot first it's over after that you think this shit is a fucking game." The confidential informant responded, "You made my dude pay so I need my money[.] Na bitch u don't know me[.]" The confidential informant subsequently texted, "Games always end and I'm not on the losing side[.]" On October 2, 2021, the confidential informant sent Lizarraga another text calling Lizarraga a profane name.

{¶27} On appeal, Lizarraga argues that the trial court abused its discretion in determining that the text messages were not relevant because they demonstrated an ongoing threat from the confidential informant.

{¶28} Lizarraga's argument is without merit. All of the charges in this case stemmed solely from the controlled drug purchase that occurred on September 7, 2021. The text messages that Lizarraga attempted to introduce occurred well after the events that gave rise to this case. Accordingly, the text messages were not relevant given that they did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Under these circumstances, Lizarraga has not demonstrated that the trial court's decision to exclude the text messages was unreasonable, arbitrary, or unconscionable. *See Blakemore*, 5 Ohio St.3d at 219.

{¶29} Lizarraga's third assignment of error is without merit.

**ASSIGNMENT OF ERROR II**

MR. ELIAS LIZARRAGA'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION[.]

{¶30} In his second assignment of error, Lizarraga claims that his convictions were against the weight of the evidence. This Court disagrees.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶31} While Lizarraga does not dispute that he sold the confidential informant approximately 56 grams of methamphetamine, he contends that the weight of the evidence does not support his conviction for the firearm specification related to the drug charge or the charge of having weapons while under disability. Lizarraga emphasizes that there was no visual evidence presented at trial that showed a firearm during the controlled drug purchase. Lizarraga argues that "lifting one's shirt is [not] enough to prove that a weapon exists." Lizarraga further suggests that it was the confidential informant, and not Lizarraga, who engaged in threatening behavior both during and after the incident.

{¶32} As discussed above, Lizarraga testified in his own defense. Lizarraga was unaware that the man acting as the confidential informant was working with law enforcement. Lizarraga expressed frustration that a family member put him in touch with the confidential informant, given that the confidential informant was an addict who appeared to be acting out of desperation.

Lizarraga reached out to an old acquittance who dealt drugs and explained the situation. The drug dealer warned Lizarraga to be careful around the confidential informant. Lizarraga testified that the drug dealer agreed to provide Lizarraga with methamphetamine on the condition that Lizarraga would repay the drug dealer after making the sale to the confidential informant. Lizarraga further testified that, given the reputation of the confidential informant, the drug dealer decided to loan Lizarraga the Smith and Wesson .40 caliber handgun for protection. Lizarraga accepted the handgun out of concern for his children, stating that the confidential informant had demonstrated a willingness to carry a weapon in the presence of children. With respect to what transpired during the controlled drug purchase, Lizarraga testified, "I showed him mine," in reference to the handgun. When asked if that was a real firearm, Lizarraga responded in the affirmative. Lizarraga explained that he did not feel safe being unarmed when he knew the confidential informant would have a gun. Lizarraga further testified that the confidential informant was carrying a gun during the controlled drug purchase.

{¶33} A thorough review of the record here reveals that Lizarraga's convictions did not result in a manifest miscarriage of justice. While Lizarraga argues that there was no visual evidence of a firearm, the video of the controlled drug purchase showed that Lizarraga raised the subject of carrying a firearm with the confidential informant and then lifted his waistband while saying, "I don't play." Furthermore, Lizarraga admitted during his testimony that he obtained a handgun from the drug dealer and that he showed the handgun to the confidential informant during the controlled drug purchase. While Lizarraga suggested during his testimony that the confidential informant was solely responsible for creating the dangerous dynamic, this Court is mindful that "the jury is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Darr*, 2018-Ohio-2548, ¶ 32 (9th Dist.). Furthermore, to the extent

that Lizarraga's manifest weight challenge is predicated on the notion that the result of trial would have been different if the trial court had not excluded the defense exhibits evidencing the text exchange between Lizarraga and the confidential informant, this Court has determined that the trial court did not abuse its discretion in excluding those exhibits. *See* Discussion of Assignment of Error III, *supra*. Under the circumstances presented here, Lizarraga has not demonstrated that this is the exceptional case where the jury clearly lost its way. *Otten* at 340.

{¶34} Lizarraga's second assignment of error is overruled.

### III.

{¶35} Lizarraga's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JOSEPH SALZGEBER, Assistant Prosecuting Attorney, for Appellee.